UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60124 CR-ZLOCH ROSENBAUM

18 U.S.C. 1962(d)

UNITED STATES OF AMERICA,

Plaintiff,

v.

THOMAS FIORE,
PASQUALE RUBBO,
FRANK D'AMATO,
JOSEPH RUBBO,
KENNETH DUNN,
BILLIE ROBERTSON,
NICHOLAS FIORE,
LEE KLEIN,
MARC BRODER,
DANIEL YOUNG, and
GUY ALESSI,

Defendants.
_______________________________/

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. The members and associates of the Bonanno Organized Crime Family of La Cosa Nostra (The Bonanno Crime Family) were an organized criminal group that operated in the Southern District of Florida, the State of New York and elsewhere. The Bonanno Crime Family was supervised and controlled by its hierarchy located in New York, and was one "family" in a nation-

wide criminal organization commonly referred to as "La Cosa Nostra," the "Mafia" and "this thing of ours."

2. The Bonanno Crime Family operated through groups of individuals headed by "captains," who were also referred to as "capos." These groups, which were referred to as "crews," consisted of "made" members (formally inducted) of the Bonanno Crime Family, who were also referred to as "soldiers," and non-member associates of the family. The non-member associates were criminals who participated in wide-ranging criminal activity with the crew and acted under the authority of a "made" member. The non-member associates were not formally inducted into the Bonanno Crime Family, but paid a portion of the proceeds derived from criminal activity to a "made" member of the Bonanno Crime Family.

3. Each made member was responsible for supervising the criminal activities of the "crew" and provided support and protection to "crew" members and associates. The made member would pay tribute to the captain derived from the proceeds generated by the crew's criminal activity.

4. The head of the Bonanno Crime Family, who was known as the "Boss," was assisted by an "Underboss," as well as by a counselor, who was known as the "Consigliere." With the assistance of the "Underboss" and "Consigliere," the "Boss" was responsible for setting policy, resolving disputes among Bonanno Crime Family members and members of other criminal organizations, and approving all significant actions by members of the Bonanno Crime Family. In return for his supervision and protection, the "Boss" received part of the illegal earnings of each "crew."

5. The Bonanno Crime Family is a secret criminal organization. The members and associates of the Bonanno Crime Family are united by their common criminal interests. While the

membership of the Bonanno Crime Family and the criminal associates involved therewith changed during the period of time charged in this indictment, and not all members and associates pursued each unlawful end, the structure of the Bonanno Crime Family remained intact.

6. Defendant THOMAS FIORE was an associate of the Bonanno Crime Family who supervised, managed and organized a crew of criminal associates located in South Florida and elsewhere. Defendants PASQUALE RUBBO, FRANK D'AMATO, JOSEPH RUBBO, KENNETH DUNN, BILLIE ROBERTSON, NICHOLAS FIORE, LEE KLEIN, MARC BRODER, DANIEL YOUNG, and GUY ALESSI were members of or were associated with the crew. The members and associates of the crew would, at various times, commit criminal acts with individuals associated with other criminal crews and other organized crime families. The members of the crew each engaged in diverse crimes on behalf of the Enterprise and had overlapping roles and responsibilities. Defendant FIORE would pay tribute to made-members of the Bonanno Crime Family. Such tribute was derived from criminal activity engaged in by members of his crew.

7. On May 20, 2008, Defendant THOMAS FIORE pled guilty in the State of Florida v. Anthony Badala et al., in the Broward County Circuit Court for the Seventeenth Judicial District, Case No. 05-1817-CF10A-Y, to Racketeering and Conspiracy to Commit Racketeering, and other charges, which charged him with engaging in criminal activities with a group of individuals associated in fact, including Gerard Chilli, a captain in the Bonanno Crime Family. Defendant THOMAS FIORE was subject to the terms of Florida State probation during the pendency of the criminal activity charged in the instant indictment.

8. On May 20, 2008, Defendant NICHOLAS FIORE pled guilty in the State of Florida v. Anthony Badala et al., in the Broward County Circuit Court for the Seventeenth Judicial District,

Case No. 05-1817-CF10A-Y, to Racketeering and Conspiracy to Commit Racketeering, and other charges, which charged him with engaging in criminal activities with a group of individuals associated in fact, including Gerard Chilli, a captain in the Bonanno Crime Family. Defendant NICHOLAS FIORE was subject to the terms of Florida State probation during the pendency of the criminal activity charged in the instant indictment.

9. On February 3, 2003, Defendant PASQUALE RUBBO pled guilty in the United States District Court for the Southern District of Florida in United States v. Anthony Graziano et. al., Case No. 02-60049-Cr-Hurley, to Racketeering Conspiracy which charged him with being a non-member associate of the Bonanno Crime Family who engaged in criminal activities with a group of individuals associated in fact, including Anthony A. Graziano, then acting consigliere of the Bonanno Crime Family, and other members and associates of the Bonanno LCN Family. Defendant PASQUALE RUBBO was subject to the terms of Federal supervised release during the pendency of the criminal activity charged in the instant indictment.

10. On January 27, 2003, Defendant JOSEPH RUBBO pled guilty in the United States District Court for the Southern District of Florida in United States v. Anthony Graziano et. al., Case No. 02-60049-Cr-Hurley, to Racketeering Conspiracy which charged him with being a non-member associate of the Bonanno Crime Family who engaged in criminal activities with a group of individuals associated in fact, including Anthony A. Graziano, then acting consigliere of the Bonanno Crime Family, and other members and associates of the Bonanno LCN Family. Defendant JOSEPH RUBBO was subject to the terms of Federal supervised release during the pendency of the criminal activity charged in the instant indictment.

11. On November 22, 2007, Round 1 Fitness Center, located at 300 Royal Palm Beach Blvd., Royal Palm Beach, Florida was damaged by means of fire. Defendant THOMAS FIORE was listed as president of such corporation.

12. A Special Agent of the Federal Bureau of Investigation (FBI) infiltrated Defendant THOMAS FIORE's "crew" while acting in the undercover capacity (hereinafter UCA) as a corrupt businessman in connection with the purported negotiation of fraudulent checks. The UCA, in his undercover capacity, engaged in criminal activity as a member of FIORE's crew, which included the purported negotiation of fraudulent checks, the purported laundering of fraudulent checks through foreign bank accounts, the acquisition and purported distribution of narcotic controlled substances, the purported sale and/or purchase of stolen consumer goods and the purchase of unauthorized identification documents and information, among other crimes. The UCA consensually recorded meetings with members of the crew, where possible.

13. From in or about September 2008, through in or about January 2009, the United States initiated Court authorized wire interceptions regarding telephone facilities utilized by members of the crew, including defendant THOMAS FIORE and defendant PASQUALE RUBBO. These Court authorized wire interceptions disclosed conversations among and between members of the Enterprise regarding criminal activity during the pendency of the conspiracy charged in this indictment.

14. On February 3, 2009, a search warrant was executed by Federal and State law enforcement personnel on the residence of Defendant THOMAS FIORE and the residence of Defendant BILLIE ROBERTSON. Law enforcement personnel seized a firearm from the residence of Defendant THOMAS FIORE.

15. On February 3, 2009, Defendant THOMAS FIORE was arrested in Palm Beach County, Florida, and charged with being a convicted felon in possession of a firearm. Defendant THOMAS FIORE was detained pretrial in the Palm Beach county jail pending disposition of this charge.

**COUNT 1**

1. The General Allegations of this Indictment, numbered one through fifteen inclusive, are realleged and expressly incorporated herein as if set forth in full.

THE ENTERPRISE

2. At all times relevant to this Indictment, the defendants,

THOMAS FIORE,
PASQUALE RUBBO,
FRANK D'AMATO,
JOSEPH RUBBO,
KENNETH DUNN,
BILLIE ROBERTSON,
NICHOLAS FIORE,
LEE KLEIN,
MARC BRODER,
DANIEL YOUNG, and
GUY ALESSI,

and other persons known and unknown to the Grand Jury, constituted an "Enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, which Enterprise engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

THE CONSPIRACY

3. From in or about 2007 and continuing thereafter through the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants:

THOMAS FIORE,
PASQUALE RUBBO,
FRANK D'AMATO,
JOSEPH RUBBO,
KENNETH DUNN,
BILLIE ROBERTSON,
NICHOLAS FIORE,
LEE KLEIN,
MARC BRODER,
DANIEL YOUNG, and
GUY ALESSI,

being persons employed by and associated with the Enterprise, which Enterprise engaged in, and the activities of which affected interstate and foreign commerce, did knowingly, willfully and unlawfully combine, conspire, confederate, and agree, together and with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5), as set forth below at paragraph 4, and through the collection of unlawful debt as set forth below at paragraph 5, as that term is defined in Title 18, United States Code, Section 1961(b), as set forth below.

THE PATTERN OF RACKETEERING ACTIVITY

4. The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), through which the defendants and their co-conspirators agreed to

conduct and participate in the conduct of the affairs of the Enterprise consisted of multiple acts indictable under:

A. Title 18, United States Code, Section 1344; Bank Fraud;

B. Title 18, United States Code, Section 1341; Mail Fraud;

C. Title 18, United States Code, Section 1343; Wire Fraud;

D. Title 18, United States Code, Section 1956; Money Laundering and Conspiracy To Launder;

E. Title 21, United States Code, Section 846; Conspiracy To Possess With Intent To Distribute Controlled Substances, to wit: oxycodone and hydrocodone;

F. Title 18, United States Code, Section 1028; Fraud and Related Activity, In Connection With Identification Documents;

G. Title 18, United States Code, Section 1029; Fraud and Related Activity, In Connection With Access Devices;

H. Title 18, United States Code, Section 1951; Extortion and Conspiracy To Extort;

I. Title 18, United States Code, Section 2314; Interstate Transportation of Stolen Property;

J. Title 18, United States Code, Section 2315; Receipt Of Stolen Property;

K. Title 18, United States Code, Sections 2341 and 2342; Trafficking In Contraband Cigarettes;

L. Title 18, United States Code, Section 1503; Obstruction of Justice;

And multiple acts and threats involving:

M. Arson, in violation of Section 806.01 Florida Statutes; and

N. Murder, in violation of Sections 782.04 and 777.04 Florida Statutes.

It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

COLLECTION OF UNLAWFUL DEBT

5. The collection of unlawful debt through which the defendants and their co-conspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise consisted of the collection from various individuals of unlawful debts, as that term is defined by Title 18, United States Code, Section 1961(6), that is, debts which were unenforceable under State and Federal law in whole and in part as to principle and interest because of the laws relating to usury and which were incurred in connection with the business of lending money at a rate usurious under State and Federal law, where the usurious rate was at least twice the lawfully enforceable rate. It was part of the conspiracy that each defendant agreed that a coconspirator would commit at least one collection of unlawful debt in the conduct of the affairs of the Enterprise.

PURPOSES OF THE ENTERPRISE

6. The purposes of the Enterprise included, but were not limited to, illegally enriching the members of the Enterprise through the commission of criminal activity. The proceeds generated through such criminal activity arose from the following criminal acts, among other crimes:

a. the illegal possession with intent to distribute controlled substances;

b. the illegal manufacture of fraudulent checks;

c. the illegal negotiation of fraudulent checks;

d. the laundering of proceeds generated from the illegal negotiation of fraudulent checks;

e. the commission of fraudulent acts against financial institutions and corporate entities regarding the manufacture and negotiation of fraudulent checks;

f. the illegal acquisition and sale of identification documents, access devices and information;

g. the trafficking in large quantities of stolen consumer goods and contraband cigarettes;

h. the operation of illegal gambling businesses;

i. the interference with commerce, that is, the extortion of business owners by threats and violence;

j. the commission of fraudulent activities against insurance providers regarding the illegal acquisition of insurance proceeds;

k. the participation in a fraud scheme regarding Medicare Program claims;

l. the obstruction of justice regarding a federal arson investigation in order to facilitate the illegal acquisition of insurance proceeds;

m. The malicious damaging and destruction and attempt to do so, by means of fire, of a building used in interstate commerce for the purpose of illegally obtaining insurance proceeds;

n. the commission of acts of violence against individuals in exchange for monetary payments; and

o. the solicitation and conspiracy to commit murder in order to facilitate the illegal acquisition of insurance proceeds.

MANNER AND MEANS OF THE CONSPIRACY
AND ROLES AND RESPONSIBILITIES OF THE CONSPIRATORS

7. Defendant THOMAS FIORE would organize, supervise and manage the criminal activities of the crew. Defendant THOMAS FIORE personally and through Enterprise members would supervise the manufacture of fraudulent checks through the use of computers located within the residences of Enterprise members. The fraudulent checks would reflect the true corporation name, address and account number of a legitimate business. Defendant THOMAS FIORE would direct Enterprise members in obtaining and utilizing such information. Defendant THOMAS FIORE would discuss with Enterprise members the negotiation and cashing of the fraudulent checks through the use of coconspirators and nominees. The fraudulent checks would be negotiated and cashed at check cashing stores, convenience stores and other merchant locations. Defendant THOMAS FIORE, believing that the UCA was a corrupt businessman, would meet with and direct other Enterprise members to meet with the UCA in order to discuss ongoing and anticipated criminal activity. Defendant THOMAS FIORE would instruct Enterprise members regarding the extent of their criminal activities undertaken with the UCA. Defendant THOMAS FIORE would discuss with the UCA the laundering of proceeds derived from the negotiation of the fraudulent checks through foreign bank accounts. Defendant THOMAS FIORE would demand and accept a portion of the criminal proceeds obtained by Enterprise members, including defendant PASQUALE RUBBO,

generated from diverse criminal activity, including the distribution of narcotic controlled substances. Defendant THOMAS FIORE and other Enterprise members would undertake the acquisition of residences to be used for illegal high stakes poker games. Defendant THOMAS FIORE would attempt to facilitate the acquisition of furniture and equipment and the solicitation of wealthy players regarding such illegal poker games. Defendant THOMAS FIORE and Enterprise members would discuss the violent extortion of business owners regarding the placement and maintenance of vending machines in such business locations. Defendant THOMAS FIORE would agree to commit acts of violence against individuals in exchange for monetary payments. Defendant THOMAS FIORE would conspire with Defendant RUBBO and other Enterprise members to threaten business owners with force and violence in order to extort illegal payments from such business owners. Defendant THOMAS FIORE and Enterprise members would discuss potential conflicts with members and associates of other organized crime families regarding the placement of vending machines and other Enterprise activities. Defendant THOMAS FIORE would illegally acquire and sell large quantities of documents containing identification information including social security numbers and other personal information to the UCA with the understanding that such information would purportedly be used for identity theft and fraud. Defendant THOMAS FIORE would conspire with other Enterprise members to illegally acquire large quantities of consumer goods purportedly stolen from outside of the State of Florida including plasma televisions and contraband cigarettes. Defendant THOMAS FIORE would maliciously cause the damaging and destruction of a business, that is a gym, Round 1 Fitness Center, located at 300 Royal Palm Beach Blvd., Royal Palm Beach, Florida, by means of fire, in order to fraudulently obtain insurance proceeds. Defendants THOMAS FIORE, NICHOLAS FIORE, BILLIE ROBERTSON, and coconspirators would participate in a scheme and

artifice to fraudulently obtain insurance proceeds derived from the commission of the arson. Defendant THOMAS FIORE and co-conspirators, including Defendants ROBERTSON and NICHOLAS FIORE would attempt to obstruct justice regarding a federal arson investigation including the use of advice provided by an attorney. Defendant THOMAS FIORE would provide false testimony under oath at a civil deposition regarding the attempt to secure insurance proceeds derived from the commission of arson. Defendant THOMAS FIORE would solicit the murder of an individual in order to facilitate the fraudulent acquisition of insurance proceeds. Defendant THOMAS FIORE would mediate a dispute by means of force or violence between Defendants DANIEL YOUNG and GUY ALESSI regarding the fraudulent submission of claims to the Medicare Program through the use of patient account information. Defendant THOMAS FIORE would solicit proceeds to be illegally derived from medicare fraud activities. Defendant THOMAS FIORE would telephonically communicate with members of the Bonanno Crime Family and would travel to New York City in order to consult with the hierarchy of the Bonanno Crime Family and pay tribute to various Bonanno Crime Family members. Defendant THOMAS FIORE, while incarcerated pretrial regarding his arrest for being a felon in possession of a firearm, would conspire with members of the criminal Enterprise, including Defendants BILLIE ROBERTSON, NICHOLAS FIORE and KENNETH DUNN, to obstruct justice and to solicit an individual to falsely allege ownership of THOMAS FIORE's firearm. Defendant THOMAS FIORE would conspire with Enterprise members, including Defendants NICHOLAS FIORE and BILLIE ROBERTSON, to dispose of evidence, that is a computer, in order to obstruct a pending Federal investigation.

8. PASQUALE RUBBO, a non-member associate of Defendant THOMAS FIORE's crew, was an enforcer for such crew and would use or threaten the use of violence to advance the

crew's objectives. Defendant RUBBO would participate in the manufacture and negotiation of fraudulent checks. Defendant PASQUALE RUBBO would himself, or through the participation of Enterprise members, use computers located in the residences of Enterprise members to create such fraudulent checks. The fraudulent checks would reflect the true corporation name, address and account number of a legitimate business. Defendant PASQUALE RUBBO would obtain such information from other Enterprise members, including Defendant THOMAS FIORE. Defendant PASQUALE RUBBO would coordinate the manufacture and negotiation of the fraudulent checks with Defendant THOMAS FIORE and other Enterprise members. Defendant PASQUALE RUBBO, believing that the UCA was a corrupt businessman, would provide large quantities of fraudulent checks to be purportedly negotiated by the UCA. Defendant PASQUALE RUBBO would direct Enterprise members and others to negotiate the fraudulent checks at check cashing stores, convenience stores and other merchant locations. Defendant PASQUALE RUBBO would conspire with other Enterprise members to launder the proceeds derived from the negotiation of the fraudulent checks through foreign bank accounts. Defendant PASQUALE RUBBO would facilitate the acquisition and distribution by Enterprise members of illegal narcotic controlled substances. The Enterprise members would illegally acquire narcotic controlled substances from pain clinics and elsewhere. Defendant PASQUALE RUBBO would split the proceeds derived from criminal activities with Defendant THOMAS FIORE, including the proceeds derived from the sale of narcotic controlled substances. Defendant PASQUALE RUBBO and other Enterprise members would undertake activities to establish illegal high stakes poker games, including the solicitation of wealthy players. Defendant RUBBO would communicate with other members and associates of the Bonanno Crime Family located in New York. Defendant PASQUALE RUBBO, believing the UCA to be a

corrupt businessman, would illegally acquire and sell to the UCA large quantities of documents containing identification information, including social security numbers, with the understanding that such information would purportedly be used for identity theft and fraud. Defendant PASQUALE RUBBO would conspire with Enterprise members to illegally acquire and distribute large quantities of stolen consumer goods, some of which were to be offered for sale to the UCA. Defendant PASQUALE RUBBO would conspire with Defendant THOMAS FIORE and other Enterprise members to threaten business owners in order to extort illegal payments from such business owners. Defendant PASQUALE RUBBO would agree to commit acts of violence in exchange for monetary payments and to advance the objectives of the crew.

9. Defendants FRANK D'AMATO and JOSEPH RUBBO, non-member associates of Defendant THOMAS FIORE's crew, would participate in the illegal manufacture and negotiation of fraudulent checks. Defendants D'AMATO and JOSEPH RUBBO would solicit individuals to cash the fraudulent checks at cash cashing stores, convenience stores and other merchant locations. Defendant JOSEPH RUBBO would solicit the names, addresses, and account numbers of unknowing businesses in order to manufacture and negotiate fraudulent checks. Defendant JOSEPH RUBBO, believing the UCA to be a corrupt businessman, would sell such fraudulent checks to the UCA with the understanding that the fraudulent checks would be illegally negotiated through financial institutions. Defendants D'AMATO and JOSEPH RUBBO would illegally acquire and distribute narcotic controlled substances, including Roxicets, a derivative of oxycodone and hydrocodone pills. Defendant D'AMATO would agree to commit acts of violence including assault and murder, in exchange for monetary payments and to advance objectives of the crew. Defendant D'AMATO would illegally store and maintain a firearm on behalf of defendant THOMAS FIORE.

10. Defendant KENNETH DUNN, a non-member associate of defendant THOMAS FIORE's crew, would participate in the manufacture and negotiation of fraudulent checks. Defendant DUNN would conspire with other Enterprise members to launder the proceeds derived from the negotiation of the fraudulent checks through foreign bank accounts and other means. Defendant DUNN, a suspended attorney, formerly admitted to practice law in Florida, would offer and provide advice to members of the Enterprise in order to facilitate the criminal activities of the Enterprise. Defendant DUNN would illegally sell large quantities of documents containing identification information, including social security numbers, with the understanding that such information would purportedly be used for identity theft and fraud. Defendant DUNN would conspire with Defendant YOUNG and other co-conspirators to submit fraudulent claims to the Medicare Program. DUNN would use his law firm's escrow account to launder proceeds illegally derived from Medicare fraud. Defendant DUNN would conspire with members of the Enterprise to solicit an individual to falsely allege ownership of Defendant THOMAS FIORE's firearm in order to obstruct a criminal case filed in Florida State Court against Defendant THOMAS FIORE.

11. Defendants BILLIE ROBERTSON and LEE KLEIN, non-member associates of Defendant THOMAS FIORE's crew, would illegally facilitate the manufacture of fraudulent checks through the use of computers and other means. Defendant KLEIN would provide to defendant THOMAS FIORE, corporation names, addresses and account numbers to facilitate the manufacture and negotiation of counterfeit checks. Defendant KLEIN would illegally utilize information obtained from computer databases in order to acquire identification information regarding potential victims of extortion and/or assault and individuals suspected by the Enterprise members of being involved with law enforcement. Defendant KLEIN would conspire with other Enterprise members

to illegally acquire large quantities of consumer goods purportedly stolen from outside the State of Florida, including plasma televisions and contraband cigarettes. Defendant ROBERTSON would conspire with Defendant THOMAS FIORE and other Enterprise members to launder the proceeds derived from the negotiation of fraudulent checks through foreign bank accounts and other means. Defendants ROBERTSON and KLEIN would engage in acts of obstruction and fraud in order to facilitate the fraudulent acquisition of insurance proceeds derived from the commission of arson. Defendant ROBERTSON would make false statements to federal law enforcement officials in order to obstruct a federal arson investigation. Defendant KLEIN would request narcotic controlled substances from other members of the criminal Enterprise. Defendant ROBERTSON would conspire with Enterprise members to solicit individuals to falsely allege ownership of Defendant THOMAS FIORE's firearm and to dispose of incriminating evidence, that is, a computer, in order to obstruct a pending Federal investigation and a criminal case filed against Defendant THOMAS FIORE in a Florida State court.

12. Defendant NICHOLAS FIORE, a non-member associate of Defendant THOMAS FIORE's crew, would participate in the negotiation of fraudulent checks. Defendant NICHOLAS FIORE would conspire with Defendant THOMAS FIORE and other Enterprise members to launder the proceeds derived from the negotiation of fraudulent checks through foreign bank accounts and other means. Defendant NICHOLAS FIORE would conspire with other Enterprise members to illegally acquire large quantities of consumer goods purportedly stolen from outside the State of Florida, including plasma televisions and contraband cigarettes. Defendant NICHOLAS FIORE would agree to commit acts of violence in exchange for monetary payments and to advance the objectives of the crew. Defendant NICHOLAS FIORE would engage in acts of obstruction and

fraud in order to facilitate the fraudulent acquisition of insurance proceeds derived from the commission of arson. Defendant NICHOLAS FIORE would conspire with Enterprise members to solicit individuals to falsely allege ownership of Defendant THOMAS FIORE's firearm and to dispose of incriminating evidence, that is, a computer, in order to obstruct a pending Federal investigation and a criminal case filed against Defendant THOMAS FIORE in a Florida State court.

13. Defendant MARC BRODER, a non-member associate of Defendant THOMAS FIORE's crew, was licensed in the State of Florida to sell life and health insurance. BRODER would illegally sell large quantities of documents containing identification information and identifiable health information, such as social security numbers and other personal information of persons, including persons who applied for insurance with defendant BRODER, in order to commit identity theft fraud. Defendant BRODER would provide to Defendants PASQUALE and JOSEPH RUBBO, corporation names, addresses and account numbers, including the names and account numbers of insurance companies on whose behalf he sold insurance in order to facilitate the manufacture and negotiation of counterfeit checks.

14. Defendant DANIEL YOUNG, a non-member associate of Defendant THOMAS FIORE's crew, would agree to provide criminal proceeds to Defendant THOMAS FIORE derived from Medicare fraud activities committed by Defendant YOUNG. Defendant YOUNG would agree to illegally provide to Defendant THOMAS FIORE, large quantities of documents containing identification information, including social security numbers, with the understanding that such information would be used for identity theft and fraud. Defendant YOUNG would fraudulently use patient account information supplied by Defendant GUY ALESSI in order to illegally submit claims

for payment by the Medicare Program. Defendant YOUNG would conspire with other Enterprise members to illegally acquire large quantities of contraband cigarettes.

15. Defendant GUY ALESSI, a non-member associate of Defendant THOMAS FIORE's crew, would conspire with Defendant THOMAS FIORE to extort and threaten Defendant DANIEL YOUNG to provide proceeds derived from a Medicare fraud scheme. Defendant ALESSI would conspire with Defendant YOUNG to submit fraudulent claims to the Medicare Program. Defendant ALESSI would provide illegally acquired patient account information to be used to facilitate Medicare fraud. Defendant ALESSI would conspire with Defendant THOMAS FIORE to assault an individual in exchange for a monetary payment. Defendant ALESSI would conspire with other Enterprise members to illegally acquire large quantities of contraband cigarettes. Defendant ALESSI would communicate with members and associates of the Bonanno LCN Family in New York, in order to facilitate the criminal activity of the Enterprise.

16. The Enterprise members would take all steps necessary to conceal their criminal conduct and would engage in conduct designed to prevent government detection of their identities, their illegal activities and the proceeds of their activities.

17. The Enterprise members would use violence and the threat of violence including murder to facilitate their criminal activities.

All in violation of Title 18, United States Code, Section 1962(d).

## RACKETEERING FORFEITURE

1. The allegations contained in the General Allegations section and in Count 1 of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count 1 of this Indictment.

2. The defendants,

THOMAS FIORE,
PASQUALE RUBBO,
FRANK D'AMATO,
JOSEPH RUBBO,
KENNETH DUNN,
BILLIE ROBERTSON,
NICHOLAS FIORE,
LEE KLEIN,
MARC BRODER,
DANIEL YOUNG, and
GUY ALESSI,

i. have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii. have an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights

are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 (a)(2);

iii. have property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3),

3. The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to, at least $2,000,000.

4. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants-

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) and Rule 32.2 Fed. R. Crim. P. to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

5. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**vs.**

**THOMAS FIORE, *et al.*,**

**Defendant.** /

**CASE NO.** ____________________

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

___ Miami ___ Key West
_X_ FTL ___ WPB ___ FTP

New Defendant(s) Yes ____ No ____
Number of New Defendants ____
Total number of counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) No
List language and/or dialect ____________

4. This case will take 20 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

(Check only one) (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | ___ | Petty | ___ |
| II | 6 to 10 days | ___ | Minor | ___ |
| III | 11 to 20 days | X | Misdem. | ___ |
| IV | 21 to 60 days | ___ | Felony | X |
| V | 61 days and over | ___ | | |

6. Has this case been previously filed in this District Court? (Yes or No) No
If yes:
Judge: ____________ Case No. ____________
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No) ____
If yes:
Magistrate Case No. ____________
Related Miscellaneous numbers: ____________
Defendant(s) in federal custody as of ____________
Defendant(s) in state custody as of ____________
Rule 20 from the ____________ District of ____________

Is this a potential death penalty case? (Yes or No) No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ____ Yes _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ____ Yes _X_ No

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
Court I.D. No. A5500030

*Penalty Sheet(s) attached

REV 4/8/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name: THOMAS FIORE

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: PASQUALE RUBBO

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: FRANK D'AMATO

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: JOSEPH RUBBO

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: KENNETH DUNN

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: BILLIE ROBERTSON

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: NICHOLAS FIORE

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: LEE KLEIN

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: MARK BRODER

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: DANIEL YOUNG

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: GUY ALESSI

Count #: 1 RICO Conspiracy, 18 U.S.C. 1962(d)

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**